UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

New England College

        v.                          Civil No. 08-cv-424-JL
                                    Opinion No. 2009 DNH 016
Drew University,
and Anne Marie Macari


**O R D E R**

Before the court is Drew University's ("Drew") motion to
dismiss the complaint against it for lack of personal
jurisdiction.  See Fed. R. Civ. P. 12(b)(2).  The plaintiff, New
England College ("NEC") objects, arguing that exercising
jurisdiction over Drew would not violate the constitution's due
process clause.[1]  See U.S. Const. amend XIV.  For the following
reasons, Drew's motion to dismiss is denied without prejudice.


**I. Jurisdictional analysis**

"To hear a case, a court must have personal jurisdiction
over the parties, that is, the power to require the parties to
obey its decrees."  Daynard v. Ness, Motley, Loadholt, Richardson

---

[1]  NEC has summarized its jurisdictional argument as
follows:  "[I]t is NEC's position that Drew University's
intentional interference with a New Hampshire-based contract {the
employment relationship between NEC and Anne Marie Macari) is
itself a New Hampshire contact by Drew University that authorizes
this Court to exercise personal jurisdiction over Drew
University."  (Pl.'s Surreply in Opp'n to Mot. to Dismiss 2).

& Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002) (internal
quotation omitted).  When jurisdiction is contested, the
plaintiff bears the burden of establishing it.  See Phillips v.
Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008).  "Under the
prima facie standard, the inquiry is whether the plaintiff has
proffered evidence which, if credited, is sufficient to support
findings of all facts essential to personal jurisdiction."  Id.
Unlike the customary approach applicable to motions to dismiss
under Rule 12(b), the focus in a jurisdictional dispute is on the
facts and evidence, as opposed to pleadings and allegations.  See
also Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001)
("plaintiff cannot rest upon mere averments, but must adduce
competent evidence of specific facts").  "The court must accept
the plaintiff's (properly documented) evidentiary proffers as
true for the purpose of determining the adequacy of the prima
facie jurisdictional showing and construe them in the light most
congenial to the plaintiff's jurisdictional claim."  Phillips,
530 F.3d at 26 (internal quotation marks and citations omitted).

There is no claim here of general jurisdiction.  See Harlow
v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005) (describing
difference between general and specific jurisdiction).  NEC bases
its claim of specific personal jurisdiction over Drew on the New
Hampshire long-arm statute.  Under that statute, "jurisdiction

2

over nonresidents may be exercised whenever the requirements of the Due Process Clause of the United States Constitution are satisfied." <u>Alacron, Inc. v. Swanson</u>, 145 N.H. 625, 628 (2000). The court thus proceeds directly to the due process analysis.

The Fourteenth Amendment's due process clause precludes a court from asserting jurisdiction over a nonresident defendant unless its contacts with the forum state are such that it has "fair warning" that it may be subject to suit there.  <u>See</u> <u>Shaffer v. Heitner</u>, 433 U.S. 186, 218 (1977) (Stevens, J., concurring); <u>see also</u> <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 474 (1985) (noting that the "constitutional touchstone" for personal jurisdiction is "minimum contacts").  The "fair warning" requirement is satisfied if the defendant has "purposefully directed" its activities at residents of the forum, <u>see</u> <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 774 (1984) (purposeful availment prong), and the plaintiff's cause of action "is related to or arises out of" those activities.  <u>See</u> <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414 (1984) (relatedness prong).  Where a plaintiff has established constitutionally significant contacts between the forum, the defendant, and the litigation, jurisdiction must still comport with "fair play and substantial justice."  <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 320 (1945) (reasonableness prong).

3

While the court must accept evidence proffered by the plaintiff as true, courts "do not credit conclusory allegations or draw farfetched inferences." <u>Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n</u>, 142 F.3d 26, 34 (1st Cir. 1998).  Here, NEC has failed to proffer sufficient evidence on either of the first two prongs of the due process inquiry:  purposeful availment and relatedness.  While NEC makes colorful allegations regarding the role Drew played in bringing about its injuries--NEC claims that (1) Drew secretly conspired with Macari, its co-defendant in the present matter, to develop a competing MFA poetry program, and (2) Macari, "with Drew University's encouragement and approval," secretly solicited NEC's students and faculty to affiliate with that program--it has failed to present evidence to support these claims.

The entirety of the evidence before the court relating to Drew's contacts with New Hampshire shows that:

- Several weeks after Macari resigned from NEC, Drew's president contacted NEC's president to respond to her inquiry regarding Macari's decision to leave, and

- Drew periodically sends representatives to New Hampshire to attend college fairs and high school visits, and to scout for sports teams.

NEC does not argue that its injuries arose out of these established contacts.  Rather, NEC asks the court to conjecture, as NEC has, that because Macari helped Drew develop its MFA

4

poetry program, and because part of NEC's faculty left to teach
in Drew's newly developed program, then Drew must have secretly
conspired with Macari to cause the injuries it has suffered
(i.e., losing faculty and students, present and potential, to
Drew's program).  The court is not--and in fact is not permitted
to be--persuaded by a jurisdictional argument based on
speculation without any evidentiary foundation.  See Barrett, 239
F.3d at 27 (requiring plaintiff to "verify the facts alleged
through materials of evidentiary quality").


**A.    *The "effects" theory of jurisdiction***

The "effects" theory of personal jurisdiction, first
recognized by the Supreme Court in Calder v. Jones, 465 U.S. 783
(1984), does not help NEC.  Under that theory, a court may
properly assert jurisdiction where a defendant has committed an
act outside of the forum state that was intended to and does in
fact cause injury within the forum.  See id. at 788; Northern
Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25  (1st Cir. 2005)
("a defendant need not be physically present in the forum state
to cause injury (and thus 'activity' for jurisdictional purposes)
in the forum state").  Appearing to advance the "effects" theory,
NEC argues that jurisdiction over Drew is proper

> because, <u>even if</u> all of the communications
> and meetings between Drew University and
> Macari had occurred outside New Hampshire,
> Drew University nonetheless engaged in New
> Hampshire 'activity' by tortiously
> interfering with the relationship between NEC
> and Macari thereby causing NEC to suffer
> economic and other injury in New Hampshire.

(Pl.'s Opp'n to Mot. to Dismiss 11) (emphasis in original).  But
in all of the cases cited by NEC, there was evidence that
intentional conduct attributable to the nonresident defendants
caused the plaintiffs' in-forum injury.  <u>See</u>, <u>e.g.</u>, <u>Northern
Laminate</u>, 403 F.3d at 18-20 (nonresident defendant invited in-
forum plaintiff to meeting in New York during which defendant
made allegedly fraudulent misrepresentations); <u>Jet Wine &
Spirits, Inc. v. Bacardi & Co.</u>, 298 F.3d 1, 3-6 (1st Cir. 2002)
(nonresident defendants, a national liquor distributor and
related companies, unilaterally terminated plaintiff's
contractual right to exclusively promote and sell various brands
of liquor in New Hampshire); <u>Pritzker v. Yari</u>, 42 F.3d 53, 57-58
(1st Cir. 1994) (nonresident defendant acquired financial
interest in forum-based lawsuit); <u>Hugel v. McNell</u>, 886 F.2d 1, 2-
3 (1st Cir. 1989) (nonresident defendant authored defamatory
newspaper article regarding in-forum plaintiff).  Here, NEC has
surmised the role Drew played in causing its injuries, but has
yet to submit (through documents or affidavits), or even proffer,

6

evidence of Drew's conduct relating to its claims.  See supra pp. 3-4.  Personal jurisdiction over Drew, thus, cannot be justified under the "effects" theory of jurisdiction.  See Calder, 465 U.S. at 788.

**B. The conspiracy theory of jurisdiction**

Implicit in NEC's jurisdictional argument,[2] which seeks to bring Drew under the jurisdiction of this court based upon Macari's actions, is its presumption that the "conspiracy theory of jurisdiction" is recognized by this court.  See Glaros v. Perse, 628 F.2d 679, 682 (1st Cir. 1980).  Under that theory, "jurisdiction can be obtained over out-of-state defendants who have conspired with in-state defendants."  Id.  The First Circuit, however, has never recognized the doctrine, see id. at 682 n.4 ("we do not mean to imply that we would adopt [another court's] rather liberal approach to conspiracy pleading, or to decide that we would recognize a conspiracy theory of personal

---

[2] For example, in explaining the source of its injuries, NEC states that "[a]s a result of Macari's acts and omissions, for the Spring 2008 term, NEC's MFA Poetry Program enrolled only five students."  (Pl.'s Opp'n to Mot. to Dismiss 11).  But NEC makes no claim that Drew solicited these students itself; rather, NEC argues that Macari, acting "with Drew University's apparent encouragement and approval," (Id. at 7), persuaded "NEC students and prospective NEC students to choose Drew University's program over that of NEC."  (Id. at 2).

7

jurisdiction at all"), and the Supreme Court has labeled the conspiracy doctrine in the venue context as having "all the earmarks of a frivolous albeit ingenious attempt to expand the [venue] statute." Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 384 (1953).  District courts in this circuit have similarly called the conspiracy theory of jurisdiction into question.  See, e.g., In re New Motor Vehicles Canadian Exp. Antitrust Litig., 307 F. Supp. 2d 145, 158 (D. Me. 2004) ("I do not believe that the First Circuit would recognize a conspiracy theory of personal jurisdiction"); In re Lupron Mktg. & Sales Practices Litig., 245 F. Supp. 2d 280, 294 (D. Mass. 2003) ("Assuming . . . that the conspiracy theory of jurisdiction could, in an appropriate factual context, pass federal constitutional scrutiny, due process requires more than a bare allegation of the existence of a conspiracy").  The court in Glaros went on to note that in jurisdictions that recognize the theory, courts still "require[] something more than the presence of a co-conspirator within the forum state, such as substantial acts performed there in furtherance of the conspiracy and of which the out-of-state co-conspirator was or should have been aware." 628 F.2d at 682. Here, even assuming, arguendo, the conspiracy theory is good law in this circuit, there is no evidence to support NEC's claim that (1) a conspiracy existed between Drew and Macari, or (2) Drew was

8

aware that Macari was committing any "substantial acts" in
furtherance of that conspiracy in New Hampshire.

## II. **Jurisdictional discovery**

NEC has asked that, in the event that the court is inclined
to grant Drew's motion to dismiss, that it be permitted to engage
in jurisdictional discovery.  "[A] diligent plaintiff who sues an
out-of-state corporation and who makes out a colorable case for
the existence of in personam jurisdiction may well be entitled to
a modicum of jurisdictional discovery if the corporation
interposes a jurisdictional defense." Sunview Condo. Ass'n v.
Flexel Int'l, 116 F.3d 962, 964 (1st Cir.1997).  While the court
is inclined to grant Drew's motion to dismiss, NEC has presented
a claim of jurisdiction that is, at least, colorable. See U.S.
v. Swiss Am. Bank, Ltd., 274 F.3d 610, 626 (1st Cir. 2001).  The
court thus concludes that jurisdictional discovery is likely to
shed light on whether jurisdiction over Drew is appropriate.  See
id. at 625 (explaining the district court's broad discretion to
order jurisdictional discovery).  The request for jurisdictional
discovery is granted.

## III. **Conclusion**

The court denies Drew's motion to dismiss (document no. 8) without prejudice to its reinstatement after NEC has had an opportunity to conduct jurisdictional discovery.  The permitted discovery is confined to 15 written interrogatories, 5 document requests, and 2 depositions per side.  To be considered by the court, both parties' interrogatories and document requests must be propounded by February 27, 2009 and answered on or before March 30, 2009.  Depositions must be conducted no later than April 3, 2009.  Each party may, but is not required to, submit a supplemental filing--not to exceed 10 pages--by April 17, 2009, apprising the court of its respective position regarding personal jurisdiction.

Because the court previously allowed Macari to amend her counterclaims to include specific allegations of defamation, NEC's Rule 12(b)(6) motion to dismiss her counterclaims (document no. 16) is denied as moot.  <u>See</u> <u>DM Research, Inc. v. College of American Pathologists</u>, 170 F.3d 53, 56 (1st Cir. 1999) (noting that the party opposing a motion to dismiss for failure to state a claim "was perfectly free to respond to the motion to dismiss by providing the district court with additional facts to make its complaint concrete and plausible").  At Macari's request,

however, the portion of her counterclaims alleging malicious

prosecution is dismissed without prejudice.


       **SO ORDERED.**

                                          _____
                                          Joseph N. Laplante
                                          United States District Judge

Dated:  February 17, 2009

cc:  William D. Pandolph, Esq.
     John J. Peirano, Esq.
     Kimberly A. Capadona, Esq.
     Martha Van Oot, Esq.
     John G. Vanacore, Esq.